1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11

12   MANUEL ALVAREZ,

13                   Plaintiff,              CIV S-05-0169 DFL PAN (JFM) PS

14             v.

                                            ORDER and
15   DEPUTY TREAT et al.,

                                    FINDINGS AND RECOMMENDATIONS
16                   Defendants.

17                            ——○◯○——

18             On January 27, 2005, proceeding in pro se, plaintiff filed a complaint

19   challenging his detention and arrest following charges by his girlfriend of false imprisonment,

20   battery, rape, sodomy and oral copulation.  The charges were not prosecuted but plaintiff's parole

21   was revoked for a period of three and one-half months.[1]  Plaintiff asserts violation of his civil

22   rights under 42 U.S.C. § 1983 based on the Fourth, Fifth and Fourteenth Amendments.  He seeks

23   damages in the amount of $2,976,000 and injunctive relief directing defendant officers to "stop

24   targeting" plaintiff.

25
     _____

26        [1] As set forth in this court's findings and recommendations filed May 25, 2005, plaintiff
     waived a parole revocation hearing, resulting in the revocation of his parole commencing May
     28, 2004; however, the proceeding was later dismissed and plaintiff was released from custody
     on September 11, 2004.

On September 16, 2005, the Honorable David F. Levi adopted this court's May 25, 2005 findings and recommendations (1) dismissing with prejudice defendant Board of Prison Terms, (2) dismissing plaintiff's claims against defendant Quintin with leave to amend, and (3) denying dismissal of defendant Hight.  Plaintiff did not amend his claims against defendant Quintin.  Defendant Hight, represented by Senior Deputy Sacramento City Attorney James Wilson, filed an answer to the complaint on October 4, 2005 and, on November 10, 2005, moved for summary judgment.  On December 8, 2005, Hight's motion for summary judgment was submitted for decision on the papers pursuant to E. D. Cal. L. R. 78-230(h) and is addressed below.

On October 24, 2005, Judge Levi adopted this court's August 30, 2005, findings and recommendations dismissing defendants Rose and Treat.

On November 9, 2005, this court directed plaintiff to file, within thirty days, a joint status report identifying all remaining defendants and the causes of action against them.  On December 5, 2005, plaintiff sought an extension of time within which to file the report and filed a motion to amend his complaint, including submission of a proposed amended complaint. On January 4, 2006, plaintiff filed a unilateral "Joint Status Report" wherein he sought leave to file a "Second Amended Complaint," which this court construes as a renewal of plaintiff's December request.

The court hereby GRANTS plaintiff's December 5, 2005 request for enlargement of time within which to file a joint status report.  However, the court notes that plaintiff's January 4, 2006 report failed to meet the court's requirements for a joint status report and instead addressed only plaintiff's proposed amended complaint.

On January 27, 2006, plaintiff filed a "Request for Default Judgment" on his proposed amended complaint, seeking damages in the amount of $2,976,000 with interest at the rate of "80% per annum," attorney fees and costs.

/////

On March 9, 2006, defendant Hight moved to dismiss plaintiff's "First Amended Complaint."  The hearing on that matter, scheduled for April 13, 2006, was vacated and the motion submitted for decision on the papers, also addressed below.

The only active complaint in this action is that originally filed by plaintiff on January 27, 2005.  This court has not granted leave to file an amended complaint.  Responsive pleadings have been filed by all duly served defendants.  Motions to dismiss were filed by the Board of Prison Terms, Quintin, Hight, Rose and Treat.  Only Hight's motion was denied; in response he filed an answer on October 4, 2005, and a motion for summary judgment on November 10, 2005.  It was not until December 5, 2005 that plaintiff first requested leave to file an amended complaint.

Fed. R. Civ. P. 15(a) provides:  "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  "In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment."  Moore v. Kayport Package Express,  885 F.2d 531, 538 (9th Cir. 1989); DCD Programs, Ltd. v. Leighton, 833 F. 2d 183, 185-186 (9th Cir. 1987); Foman v. Davis, 371 U.S. 178, 182 (1962).  A district court may deny leave to amend a pleading upon a reasonable assessment such amendment would be futile.  Rutman Wine Co. v. E. & J. Gallo Winery, 829 F. 2d 729, 738 (9th Cir. 1987).   Such assessment includes consideration whether the proposed pleading states a colorable claim unexpressed in the original pleading.  DCD Programs, 833 F. 3d at 185, n. 2.

The proposed amended complaint asserts for the first time that (1) plaintiff is a qualified individual under the Americans with Disabilities Act (without explanation), (2) plaintiff has complied with the requirements of the Federal Tort Claims Act (plaintiff's attachment

1   demonstrates compliance with the California Tort Claims Act), and (3), incorrectly, that

2   principles of strict liability should apply to plaintiff's claims under 42 U.S.C. § 1983.  Plaintiff

3   asserts leave should be granted to file this proposed amended complaint because "certain relevant

4   facts . . . came into plaintiff's possession after the filing of the complaint" (plaintiff identifies no

5   new relevant facts), plaintiff seeks to join additional defendants (one additional police officer),

6   and plaintiff seeks to "attempt service again" upon defendants Tidwell and Sargent (neither of

7   whom were timely served process on plaintiff's original complaint).  The proposed complaint

8   names on its face only three defendants – Officers Hight, Tidwell and Sargent – and in the body

9   adds Officer Carolyn Stephens – and thus appears to be an attempt by plaintiff to obtain a second

10  opportunity to serve process upon Tidwell and Sargent, and to avoid the court's consideration of

11  Hight's motion for summary judgment.  Officer Stephens' role in plaintiff's detention and arrest

12  presents legal issues very similar to those asserted against Officer Hight; making her a defendant

13  will not give additional substance to plaintiff's complaint.

14          The court finds therefore that plaintiff's proposed amended complaint is the

15  product of both undue delay and dilatory motive; its filing would be futile in substance and

16  unduly prejudicial to defendants.

17          Accordingly, the court hereby DENIES plaintiff's December 5, 2005 request

18  for leave to file an amended complaint.  Defendant Hight's objections filed December 7, 2005

19  are duly noted and Hight's March 9, 2006 motion to dismiss plaintiff's first amended complaint

20  is DENIED as moot.  Similarly, plaintiff's January 27, 2006 request for default judgment based

21  on defendant's failure to answer plaintiff's proposed amended complaint is also DENIED.

22          Further, the court RECOMMENDS DISMISSAL of officers Tidwell and

23  Sargent based on plaintiff's failure timely to serve process upon either defendant.  In a proof of

24  service filed December 5, 2005, plaintiff asserts both city police officers were personally served

25  with the complaint (no mention of summons) on December 5, 2005, more than 300 days after the

26  complaint was filed.  Dismissal is directed by Fed. R. Civ. P. 4(m), which authorizes the court to

dismiss an action without prejudice as to any defendant not served with the summons and

complaint within 120 days after the filing of the complaint.

Officer Hight, the only remaining defendant, moves for summary judgment.

<u>STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate when it is demonstrated that there exists

"no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying
those portions of "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any," which it believes demonstrate the
absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987).

   In the endeavor to establish the existence of a factual dispute, the opposing

party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

committee's note on 1963 amendments).

   In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### FACTS

The material facts, construed in the light most favorable to plaintiff, are as

follows.  On the evening of May 12, 2004, Sacramento City Police Officers Michael Hight, R.

Tidwell and Carolyn Stephens were dispatched to the U.C. Davis Medical Center to investigate

an alleged rape reported by Shawaha Washington.  The officers arrived at the medical center at

approximately 8:40 p.m.  Officers Hight and Tidwell responded to the emergency room waiting

area where U.C.D. police officers were detaining plaintiff in handcuffs.  The U.C.D. officers told

Officers Hight and Tidwell that plaintiff was the named suspect in the alleged rape.  Officers

Hight and Tidwell accepted custody of plaintiff and placed him in city handcuffs, returning the

original set of cuffs to the U.C.D. officers.  Officers Hight and Tidwell escorted plaintiff to the

back sear of their patrol car where they remained while Officer Stephens interviewed Ms.

Washington in the emergency room.

Ms. Washington told Officer Stephens she had lived with plaintiff the past two

months and that he had assaulted her on May 11 and May 12, 2004.  Officer Stephens states that

despite a lack of visible injuries to the complainant, "Based upon Ms. Washington's [full]

statement, and [the fact that] her behavior was consistent with what my training and experience

as a peace officer caused me to expect to see under such circumstances, I formed the opinion that

there was probable cause to believe that the reported crimes had occurred, and that Mr. Alvarez

had been their perpetrator."  Stephens Decl., ¶¶ 7, 10.

At approximately 9:40 p.m., following the completion of Officer Stephens'

interview of Ms. Washington, Officer Stephens went to the parked patrol car of Officers Hight

and Tidwell and placed plaintiff under arrest for violations of California Penal Code sections 261

(forcible rape), 288a (lewd and lascivious acts), 243(e) (sexual battery), and 3056 (parole

1   violation).   Officers Hight and Tidwell then transported plaintiff to the Sacramento County Main

2   Jail where they transferred custody to the Sacramento County Sheriff's Department.

3           In his signed opposition to defendant's motion for summary judgment, which

4   the court construes as an affidavit, plaintiff asserts that his detention and arrest were unsupported

5   by probable cause because there was no physical evidence to support Ms. Washington's

6   allegations; that Officers Hight and Tidwell injured plaintiff's right shoulder (plaintiff's only

7   other reference to this allegation is in his complaint and states, "one of the Sacramento police

8   officer[s] . . . grabed my right arm to tuest back to hand cuff me" [sic]); and that

9   Officers Hight and Tidwell repeatedly questioned plaintiff in violation of plaintiff's <u>Miranda</u>

10  rights.

11                              <u>ANALYSIS</u>

12          "A private right of action pursuant to 42 U.S.C. § 1983 exists against law

13  enforcement officers who, acting under the color of authority, violate federal constitutional or

14  statutory rights of an individual.   <u>See</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999).  The defense of

15  qualified immunity, however, shields an officer from trial when the officer "reasonably

16  misapprehends the law governing the circumstances she confronted," even if the officer's conduct

17  was constitutionally deficient.  <u>Brosseau v. Haugen</u>, 543 U.S. 194 (2004) (per curiam)."  <u>Motley</u>

18  <u>v. Parks</u>, 432 F.3d 1072, 1077 (9th Cir. 2005).

19          "In <u>Saucier v. Katz</u>,  533 U.S. 194 (2001), the Supreme Court laid out the

20  framework for determining an officer's entitlement to qualified immunity.  The threshold inquiry

21  requires a court to ask, taken in the light most favorable to the party asserting the injury, do the

22  facts alleged show the officer's conduct violated a constitutional right?  The inquiry ends at this

23  stage if no constitutional right is found to have been violated; the plaintiff cannot prevail.  If, on

24  the other hand, the plaintiff's allegations do make out a constitutional injury, then the court must

25  determine whether that constitutional right was clearly established at the time of the violation.  If

26  the right was not clearly established, the qualified immunity doctrine shields the officer from

further litigation. . . . [I]f the violated right was clearly established [but] . . .the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense.  Id., at 205 (citations and internal quotations omitted).

Plaintiff asserts his detention and arrest violated the Fourth Amendment because made without probable cause.  "The Fourth Amendment governs all intrusions by agents of the public upon personal security."  Terry v. Ohio,  392 U.S. 1, 19, n. 15 (1968).   "[T]he central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security."  Terry, at 19.   It is the general rule that police detentions require probable cause that a person has committed or is about to commit a crime, although the lesser standard of reasonable suspicion is adequate to conduct a brief, investigatory search or seizure.  Gallegos v. City of Los Angeles, 308 F.3d 987, 990 (9th Cir. 2002), citing Florida v. Royer, 460 U.S. 491, 498 (1983) (plurality opinion), and Illinois v. Wardlow, 528 U.S. 119, 123 (2000).   "[P]robable cause. . . demands no more than a proper assessment of probabilities in particular factual contexts."   Illinois v. Rodriguez, 497 U.S. 177, 185 (1990) (internal quotation marks omitted).  "Probable cause to arrest depends 'upon whether, at the moment the arrest was made . . . the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'"  Adams v. Williams, 407 U.S. 143, 148 (1972), quoting  Beck v. Ohio, 379 U.S. 89, 91 (1964). The standards are lower for parolees who do not retain the full panoply of Fourth Amendment rights and protections possessed by the general public. [2]

Reasonable suspicion supported the Sacramento police officers' initial detention

_____

[2]  See, e.g., Motley v. Parks, 432 F.3d 1072, 1083 (9th Cir. 2005), citing  Morrissey v. Brewer, 408 U.S. 471, 478 (1972); Cal. Penal Code § 3067(a) (mandating that every state parolee "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause"); but see People v. Samson, 2004 WL 2307111 (2005), cert. grtd., Samson v. California, 126 S.Ct. 34 (September 27, 2005) (examining contours of California parolee's Fourth Amendment rights).

of plaintiff, established by the statements of the U.C. D. police officers that plaintiff was the named suspect in an alleged sexual attack then under investigation; probable cause was established by Officer Stephens' investigation.  Plaintiff's hour-long detention in the back of the officers' patrol car was reasonable in light of Officer Stephen's contemporaneous investigation.  "The length and scope of detention must be justified by the circumstances authorizing its initiation."  Pierce v. Multnomah County, 76 F.3d 1032, 1038 (9th Cir.1996), citing Terry v. Ohio.  Plaintiff has failed to demonstrate that his detention was outside the scope of protections accorded by the Fourth Amendment.  Accordingly, summary judgment should be granted in defendant's favor on plaintiff's seizure claim.

Plaintiff asserts Officers Hight and Tidwell used excessive force to arrest him, injuring plaintiff's right shoulder.  "Claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure `are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."  Motley, supra, 432 F.3d at 1088, quoting Graham v. Connor, 490 U.S. 386, 388, n. 10 (1989).  "'[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  Muehler v. Mena, 125 S.Ct. 1465, 1470 (2005), quoting Graham v. Connor, 490 U.S. 386, 396 (1989).  However, the force must be reasonable in light of all the circumstances.  Id. The use of handcuffs is warranted in inherently dangerous settings to minimize the risk of harm to suspects, officers and innocent third parties.  Muehler, 125 S.Ct. at 1470-1471.

Plaintiff has produced no facts to sustain a reasonable inference that he was injured or otherwise subjected to excessive force by Officer Hight.  Plaintiff's only allegations are (1) in his complaint, that "one of the Sacramento police officer[s] . . . grabed my right arm to tuest back to hand cuff me [sic]," and (2) in his affidavit, that Officers Hight and Tidwell "injured" plaintiff's right shoulder when they "arrested" him.  Neither allegation demonstrates injury or excessive force.  Officer Hight states that "the exchange of handcuffs took place without incident," and that plaintiff neither appeared injured nor complained of injury when they

initially took him into custody or when they transferred custody of plaintiff to Sacramento County.   Hight Decl., ¶¶ 7, 11.  Plaintiff has failed to state a constitutional violation.  Defendant is entitled to summary judgment on plaintiff's excessive force claim.

Finally, plaintiff asserts that Officers Hight and Tidwell repeatedly questioned plaintiff without warning him of his Fifth Amendment right against self-incrimination and right to counsel pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).  At issue is plaintiff's hour-long detention by Officers Hight and Tidwell prior to plaintiff's formal arrest.

In Miranda, the Court held (id., at 444 (fn. omitted).

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.  As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required.  Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

"Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving of Miranda protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  California v. Beheler, 463 U.S. 1121, 1125 (1983), quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977); cf., Berkemer v. McCarty, 468 U.S. 420, 428-429 (1984) (suspect formally arrested and instructed to get into the police car). "[T]he term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  Rhode Island v. Innis, 446 U.S. 291, 301, fn. omitted (1980).

It is undisputed that plaintiff was "in custody" during his detention by Officers

Hight and Tidwell, and defendant concedes that plaintiff was not appraised of his <u>Miranda</u> rights until his formal arrest by Officer Stephens.  Accepting as true plaintiff's assertion the officers questioned and "badgered" him pending his formal arrest, the court finds that plaintiff was subject to "custodial interrogation" warranting advisement of his <u>Miranda</u> rights and that defendant's failure to so advise plaintiff renders inadmissable any statement plaintiff made during the interrogation.

Plaintiff's "charge sheet" upon arrest provides:

Parolee's Statement: Subject told officers that he and the victim had consensual sex including anal sex 5-11-04, and 5-12-04.

Plaintiff retorts in his affidavit, "I never said that I had any kind of sexual contact of any kind."

Plaintiff fails to state a claim under <u>Miranda</u> because he alleges no cognizable injury.  Plaintiff does not assert that his statement, as characterized by either the officers or plaintiff, was admitted into any judicial or parole revocation proceeding.  "[A] mere failure to give <u>Miranda</u> warnings does not, by itself, violate a suspect's constitutional rights or even the <u>Miranda</u> rule. . . .This, of course, follows from the nature of the right protected by the Self-Incrimination Clause, which the <u>Miranda</u>  rule, in turn, protects.  It is a fundamental *trial* right. . . .It follows that police do not violate a suspect's constitutional rights (or the <u>Miranda</u> rule) by negligent or even deliberate failures to provide the suspect with the full panoply of warnings prescribed by <u>Miranda</u>.  Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial. And, at that point, the exclusion of unwarned statements . . . is a complete and sufficient remedy for any perceived <u>Miranda</u> violation."  <u>U.S. v. Patane</u>, 542 U.S. 630, 641 (2004) (citations, internal quotations and footnote omitted).   "[D]amages are not available against defendant police officers for Miranda violations."  <u>Elliott v. City of Union City</u>, 1990 WL 159499, *2 (9th Cir. 1990), citing <u>Bennett v. Passic</u>, 545 F.2d 1260, 1263 (10th Cir. 1976).  Accordingly, defendant is entitled to summary judgment on plaintiff's <u>Miranda</u> claim.

Defendant Hight shoould therefore be granted summary judgment on plaintiff's

1  complaint.

2    For the foregoing reasons, IT IS HEREBY ORDERED that:

3    1.  Plaintiff's December 5, 2005 request for enlargement of time within which to

4  file a joint status report is GRANTED nunc pro tunc.

5    2.  Plaintiff's December 5, 2005 request for leave to file an amended complaint is

6  DENIED.

7    3.  Plaintiff's January 4, 2006 request for leave to file a second amended

8  complaint, which this court construes as a renewal of plaintiff's December 5, 2005 request, is

9  DENIED.

10    4.  Plaintiff's January 27, 2006 request for default judgment based on defendant

11  Hight's failure to answer plaintiff's proposed amended complaint is DENIED as moot.

12    5. Defendant Hight's March 9, 2006 motion to dismiss plaintiff's first amended

13  complaint is DENIED as moot.

14    Additionally, the court HEREBY FINDS that:

15    1.  Plaintiff failed timely to serve process upon defendants Tidwell and Sargent.

16  Fed. R. Civ. P. 4(m).

17    2.  Plaintiff has failed to state a constitutional violation warranting relief under 42

18  U.S.C. § 1983.

19    Accordingly, the court HEREBY RECOMMENDS that:

20    1.  Defendants Tidwell and Sargent be DISMISSED based on plaintiff's failure

21  timely to serve process upon them.

22    2.  Defendant Hight's motion for summary judgment be GRANTED on plaintiff's

23  complaint.

24    These findings and recommendations are submitted to the Honorable Davis F.

25  Levi, the United States District Judge assigned to this case.  28 U.S.C. § 636(b)(l).  Written

26  objections may be filed within ten days after being served with these findings and

recommendations.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 3, 2006.


UNITED STATES MAGISTRATE JUDGE

006:alva0169.f&r